CLINTON H. CUNNINGHAM, Appellant, v. VON MAYES as Receiver of and for CITIZEN'S BANK OF HAYTI, and MACK STUBBLEFIELD as Sheriff of Pemiscot County Missouri, Respondents.

**Springfield Court of Appeals, May 22, 1916.**

1. **FIXTURES: Tests to Determine What Are.** Tests as to fixtures being part of the realty set out and applied.

2. ———: **What Not: Execution Sale.** Where a store building was leased for post office purposes and certain articles necessary to fix up same for that purpose were placed therein and leased separately with the building they were not fixtures so as to pass by execution sale of the building.

Appeal from Pemiscot County Circuit Court.—*Hon. Frank Kelley,* Judge.

AFFIRMED.

*C. G. Shepard* and *Everette Reeves* for appellant.

*B. L. Guffy* and *Von Mayes* for respondents.

STURGIS, J.—This is a suit to enjoin the Sheriff and judgment creditor from selling under execution the post office furniture and fixtures in the building at Caruthersville, Missouri, leased to the United States for a post office and being used as such.  The plaintiff is the owner of the real estate, including the building, having title thereto by virtue of a sheriff's deed under execution.  One Roberts was the former owner of both the building and the furniture and fixtures in question, and as such leased the same to the United States for post office purposes for the period of ten years.  Subsequent to this lease two judgments were obtained against Roberts.  Execution was issued on one judgment, levy made on this real estate, and the same sold and a sheriff's deed executed to defendant as purchaser conveying the same to him by appropriate description of the land.  Subsequently execution was issued on the other judgment and levy made by the Sheriff on the post office furniture and fixtures as the personal property of Roberts.  The plaintiff claims that such property is not personalty but a part of his real estate passing to him by his purchase and sheriff's deed.  The trial court, after hearing the evidence, found for defendant and refused to grant a permanent injunction.

The rights of the United States as tenant of this property are in no wise involved, as the purchaser of any or all of it, whether realty or personalty, must take the same subject to such lease.

This suit is in reality between two creditors or purchasers under the respective executions, and it is held in Donnowald v. Turner Real Estate Co., 44 Mo. App. 350 and State to use v. Marshall & Co., 4 Mo. App. 29, that in such cases many of the distinctions arising between landlord and tenant, vendor and vendee, etc., determining the question whether as between such parties fixtures are to be regarded as personalty or part of the realty are of no value.  It is said in the second case that the question of intention, which is so often the paramount one, is of little importance, and in the first one it is said that the issues must be determined with more particular reference to the character of the annexation and the

uses and purposes of the property annexed. This, we think, means little more than that the intention of the owner is to be determined by the physical and other pertinent facts rather than by any express intention as evidenced by contract or understanding between the parties differently interested in the property or by any secret intention established by oral evidence. [Progress Press Brick Co. v. Brick & Quarry Co., 151 Mo. 501, 516, 52 S. W. 401.]

The material, physical and pertinent facts in this case are: That the building had not been erected for the special purpose of a post office, but for general business purposes and was an ordinary store room. The fixtures were not built in or with the building nor contemplated as a part of the same. [Rogers v. Crow, 40 Mo. 91.] When it was leased for the post office the owner was required to and did place this furniture and fixtures therein and lease the same along with the building, though separately mentioned in the lease. It is agreed that these fixtures are such as are usual and common in post offices in towns such as Caruthersville. They are manufactured and sold for that purpose and are, for the most part, suitable for no other purpose. When the government ceases to use a building for a post office, such fixtures are necessarily removed, if the building is to be further used at all, and in this respect such fixtures differ from ordinary trade fixtures which may be used by successive owners or tenants in the same or any similar business. It is common knowledge that such fixtures are moved from one building to another on the change of the post office site.

The particular fixtures in question consisted of post office cabinets with boxes therein, money order and stamp cabinets, general delivery cabinets, tables for receiving and dispensing mail both city and rural route, lockers, desks, an iron safe, etc. The cabinets of boxes, the money order and stamp cabinets and general delivery cabinets were so placed as to form a partition separating the lobby from the part of the room used by the post office employees. These were set on the floor or on bases prepared for same, and fastened thereto by

screws or nails and were also fastened to the ceiling by braces. No, or only slight, damage would be done to the building by their removal. The iron safe, the lockers, tables and some of the cabinets were not fastened to the building at all.

We know of no rule by which these articles of furniture last mentioned, not in any way attached to the realty, can be held to be fixtures, and pass with the realty. While necessary to the use to which the building is now put, so is household furniture in every dwelling house, and iron safes in offices and business houses.

In 19 Cyc. 1037 the test as to fixtures being part of the realty is stated thus: "(1) Actual annexation to the realty, or something appurtenant thereto. (2) Appropriation to the use or purpose of that part of the realty with which it is connected. (3) The intention of the party making the annexation to make the article a *permanent accession to the freehold*—this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." And in this same work and volume, page 1047, this language is used: "If the annexation is not intended to be *permanent* the chattel will not be deemed a fixture. As it is sometimes expressed, 'it must be for the benefit of the inheritance.'" To the same effect is Donnewald v. Turner Real Estate Co., supra, citing Wood, Landlord and Tenant. In Rogers v. Crow, 40 Mo. 91, the court held that lamps, chandeliers, candelabra, sconces, brackets, and the various contrivances for lighting houses, in that case a church, by means of candles, oil or other fluids or gas, are not fixtures and do not form part of the freehold so as to pass by a sale of the realty, though affixed thereto and necessary to its use as such. It is also there held that a church organ was such a fixture where the facts showed that in building the church an alcove or recess had been constructed so as to receive the organ and it was a part of the church as designed. The criterion for determining what are fixtures is there stated to be the united application of the tests above

quoted from 19 Cyc. 1037. This case is cited and followed by the Court of Appeals of Illinois in Chapman v. Union Mutual Life Ins. Co., 4 Ill. App. 29, where it is held that ordinary movable settees of a church, as well as gas chandeliers, lamps, brackets, etc., are not such fixtures as pass with the realty under a sheriff's sale thereof, the court saying: "But the fact that furniture is indispensable to the proper uses of the building does not make the furniture so far a permanent accessory thereto as to impress upon it the character of a fixture."

In Tyler v. White, 68 Mo. App. 607, 610, it is made a test of fixtures "that a permanent accession to the freehold was intended to be made by the annexation of the article."

The court may well have found here that the only purpose in fastening these fixtures to the realty was for security and to keep same in place. This fact tends to rebut the idea of same becoming a part of the realty. [19 Cyc. 1041.]

The present case differs from Crane v. Construction Co., 121 Mo. App. 209, 98 S. W. 795 and St. Louis Radiator Co. v. Carroll, 72 Mo. App. 315 and Sosmon v. Conlon, 57 Mo. App. 25, cited by respondent, as the property there in question was placed in the building in accordance with the purpose and design for which the building was constructed or to be permanently used.

These views lead to an affirmance of the judgment. *Robertson, P. J.*, and *Farrington, J.* concur.